

**FILED**
at Santa Fe, NM

AUG - 1 2006

MATTHEW J. DYKMAN
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO



| | |
|---|---|
| IN RE: SUBPOENAS *DUCES TECUM* ISSUED BY THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO IN: | Case No. MC - 06 - 20  MV |
| JOANNE SIEGEL and LAURA SIEGEL LARSON,  Plaintiffs,  v.  WARNER BROS. ENTERTAINMENT INC., et al.,  Defendants. | Case Nos. CV 04-8400; 04-8776 (Consolidated for Discovery Purposes)  Action Pending in the U.S. District Court for the Central District of California |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA *DUCES TECUM*, FOR CONTEMPT, AND FOR ATTORNEYS' FEES

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), by and through counsel, Sutin Thayer & Browne, a Professional Corporation (Benjamin Allison), respectfully submit this memorandum of law in support of their motion to compel production of documents pursuant to Fed. R. Civ. P. 45(c)(2)(B), for contempt pursuant to Fed. R. Civ. P. 45(e), and for attorneys' fees.



## PRELIMINARY STATEMENT

Movants are defendants in two complex actions (consolidated for discovery) pending in the U.S. District Court for the Central District of California, relating to, *inter alia*, copyrights in certain Superman literary works. Pursuant to Fed. R. Civ. P. 45, on April 12, 2006, Movants served subpoenas *duces tecum* (the "Subpoenas") on Jean Shuster Peavy and on her son, Mark Peary (collectively, the "Shuster Heirs") (attached as Exhibits 1-2 hereto are copies of the Subpoenas served on Jean Shuster Peavy and Mark Peary, respectively), both residents of Santa Fe, New Mexico, who are, respectively, the sister and nephew of Joseph Shuster ("Shuster") one of the co-creators of Superman. In response to the Subpoenas, to which no objection was ever served, the Shuster Heirs produced only eight pages of documents. It is clear that the Shuster Heirs have made virtually no effort to comply with the Subpoenas. Movants respectfully request that the Shuster Heirs be ordered to produce all responsive documents without objection and that they be held in contempt. Movants further request an award of attorneys' fees for the cost of making this motion.

## FACTUAL BACKGROUND

Plaintiffs in the two actions, Joanne Siegel and her daughter, Laura Siegel Larson (the "Siegels") are, respectively, the widow and daughter of Jerry Siegel ("Siegel") who, along with Shuster, created the first Superman comic, published in 1938. The Siegels have instituted two actions arising out of their purported terminations of copyright grants pursuant to section 304(c) of the Copyright Act, 17 U.S.C. § 304(c), relating to literary works featuring the Superman character. The first case, Case No. CV 04-8400 RSWL

(RZx) (C.D. Cal.) (the "Superman Action"), is based on termination notices mailed on April 3, 1997 purporting to terminate Siegel's copyright grants to defendant and counterclaimant DC Comics' predecessor, Detective Comics, Inc., (the "Superman Termination Notices"), affecting Siegel's share as a co-author in seven grants of rights under copyright made by Siegel and Shuster in the Superman character and comic book stories dating back to 1937. (Attached as Exhibit 3 hereto is a copy of the First Amended Complaint in the Superman Action.) The Superman Termination Notices, which identify more than 15,000 works purportedly affected, relate only to Siegel's -- but not Shuster's -- participation in these grants. The Shuster Heirs did not serve a notice of termination pursuant to section 304(c) to terminate Shuster's copyright grant for the first extension of the copyright renewal period. Thus, regardless of whether the Siegels' Superman Notices are valid -- a proposition disputed by Movants -- DC Comics remains the successor to and thus the owner of Shuster's undivided one-half interest in copyright in all Superman literary works. Beyond a declaration as to the effectiveness of the Superman Termination Notices, the principal relief Plaintiffs seek in the Superman Action is an accounting for Siegel's one-half share in profits from Superman exploitation following the purported effective date of the termination. (*Id.*)

On November 8, 2002, the Siegels served a "new" notice of termination (the "Superboy Termination Notice"), relating only to comics featuring Superboy and purporting to terminate grants made only by Siegel in the Superboy works. On October 22, 2004, the Siegels filed the second action (the "Superboy Action," collectively referred to hereafter, with the Superman Action, as the "Underlying Actions"), Case No. 04-8776,

seeking a declaration that they have recaptured all rights in Superboy. (Attached as Exhibit 4 hereto is a copy of the First Amended Complaint in the Superboy Action.) The Siegels allege further that "[d]efendants' ongoing exploitation of the 'Superboy' mythology, including but not limited to the Superboy Comic Books, and other publications, 'Superboy' merchandising, animated and live action television programming (*e.g.*, the *Smallville* Series)" infringes the Siegels' copyright rights in certain materials relating to the Superboy character. (*Id.* ¶ 67.)

Defendant DC Comics has filed extensive affirmative defenses and counterclaims in both actions. (Attached as Exhibit 5 hereto is a copy of the First Amended Counterclaims in the Superman Action.) Those counterclaims, which are virtually identical in both cases, include: (1) a request for a declaration that the Siegels' Notices of Termination are invalid; (2) a request for a declaration that the Siegels' claim for co-ownership of Superman is barred by the statute of limitations; (3) in the alternative, breach of a settlement agreement; (4) in the alternative, a request for a declaration that the Siegels are entitled only to the financial compensation in the settlement agreement; (5) in the alternative, a declaration of limitations on the scope of any recovery by the Siegels; (6) in the alternative, a declaration of the accounting principles to be applied in any revenue sharing with the Siegels. (*Id.*)

### The Shuster Heirs

In or around July 2003, the Shuster Heirs purportedly unearthed a copy of an alleged last will and testament of Shuster, naming his sister, Jean Shuster Peavy, as sole beneficiary and executrix of his estate. Ms. Peavy executed a document declining to

serve as executrix of the estate and naming her son Mark Peary as the executor. In addition, the Shuster Heirs petitioned the Los Angeles Superior Court to name Mr. Peary as the "personal representative" with respect to Shuster's copyrights. (Attached as Exhibit 6 hereto are copies of papers filed with the Los Angeles Superior Court by the Shuster Heirs.)

On November 10, 2003, the Shuster Heirs served a purported notice of termination pursuant to section 304(d) of the Copyright Act, 17 U.S.C. § 304(d) (the "Shuster Termination Notice"), attempting to terminate certain grants of copyright for the portion of the copyright term most recently extended by law in certain Superman literary works. The Shuster Heirs claim that the Shuster Termination Notice will be effective October 26, 2013.

### The Subpoenas *Duces Tecum*

On April 12, 2006, the Shuster Heirs were served with the Subpoenas. (Exs. 1-2.) The Subpoenas required the Shuster Heirs to appear for depositions in Santa Fe, and to produce six categories of documents prior to the depositions.

On May 3, 2006, counsel for the Movants sent an e-mail to counsel for the Shuster Heirs (who is also counsel for the Siegels in the Underlying Actions), asking for available dates for the Shuster Heirs' depositions and asking when the responsive documents would be produced. (Attached as Exhibit 7 is a copy of a May 3, 2006 e-mail from Movants' counsel to the Shuster Heirs' counsel.) The same day, the Shuster Heirs' counsel responded, stating, *inter alia*, that he would contact them "to help organize their document production." The Shuster Heirs' counsel *did not* object to the Subpoenas or to

any of the categories of the documents requested therein. (Attached as Exhibit 8 is a copy of a May 3, 2006 e-mail from the Shuster Heirs' counsel.)

On May 31, 2006, Movants' counsel followed up on, *inter alia*, the status of the Shuster Heirs' document production. (Attached as Exhibit 9 is a copy of a May 31, 2006 e-mail from Movants' Counsel for the Shuster Heirs' counsel.) The Shuster Heirs' counsel responded the same day, apologizing for his delay, and again failing to object to the Subpoenas or to the document request. (Attached as Exhibit 10 is a copy of a May 31, 2006 e-mail from the Shuster Heirs' Counsel.) On June 5, 2006, having received neither available dates for the Shuster Heirs' depositions nor any responsive documents, Movants' counsel followed up again. (Attached as Exhibit 11 is a copy of a June 5, 2006 email from Movants' counsel to the Shuster Heirs' counsel.)

On June 19, 2006, having heard nothing from the Shuster Heirs' counsel and having received no responsive documents, Movants' counsel followed up again stating, *inter alia*, "[i]n particular, I need to know when I will receive the documents and when your clients are available for deposition." (Attached as Exhibit 12 hereto is a copy of a June 19, 2006 e-mail from Movants' counsel to counsel for the Shuster Heirs.) The Shuster Heirs' counsel responded stating, *inter alia*, "I understand that Mark Peary and Joan Peavy's documents are quite limited and will be produced shortly." Again, no objection to any portion of the Subpoenas' document requests was included. (Attached as Exhibit 13 is a copy of a June 19, 2006 e-mail from the Shuster Heirs' counsel to Movants' counsel.) The Shuster Heirs' counsel sent two further e-mails on June 19, 2006 but in neither included an objection to any portion of the Subpoenas. (Attached as

Exhibit 14 are copies of two further e-mails dated June 19, 2006 sent by the Shuster Heirs' counsel.)

The next day, Movants' counsel followed up again on the status of the documents. (Attached as Exhibit 15 is a copy of a June 20, 2006 e-mail from Movants' counsel to counsel for the Shuster Heirs.) The same day, the Shuster Heirs' counsel stated he was "checking" but again articulated no objection to the document requests (which objection would have been untimely in any event). (Attached as Exhibit 16 is a copy of a June 20, 2006 e-mail from the Shuster Heirs' counsel.) On July 13, 2006, having received no documents, Movants' counsel followed up again. (Attached as Exhibit 17 hereto is a copy of a July 13, 2006 e-mail from Movants' counsel to the Shuster Heirs' counsel.) The next day, the Shuster Heirs' counsel sent an e-mail stating that he had "the documents Peary/Peavy responsive to your subpoena and will send today. As mentioned there are only a few documents." (Attached as Exhibit 18 hereto is a July 14, 2006 e-mail from the Shuster Heirs' counsel to Movants' counsel.) No objections were included in this correspondence. Later that day, the Shuster Heirs' counsel faxed eight pages of purportedly responsive documents and, in a cover letter, reserved the right to supplement the production. The letter *did not* include any objections to the Subpoenas. Moreover, no privilege log was included with the production. (Attached as Exhibit 19 is a copy of a July 14, 2006 letter from the Shuster Heirs' counsel to Movants' counsel.)

On July 18, 2006, Movants' counsel sent a letter to the Shuster Heirs' counsel outlining the deficiencies in the document production and reminding him that the Shuster Heirs' failure to object to the Subpoenas' document requests had resulted in a waiver of

such objections. The letter demanded production of all responsive documents no later than July 25, 2006. (Attached as Exhibit 20 hereto is a copy of a July 18, 2006 letter from Movants' counsel to the Shuster Heirs' counsel.)

To date, the Shuster Heirs have not supplemented their production, necessitating the present motion.

## ARGUMENT

### I
### THE SHUSTER HEIRS SHOULD BE REQUIRED TO PRODUCE ALL DOCUMENTS RESPONSIVE TO THE SUBPOENAS, WITHOUT OBJECTION

**1. The Documents Called For by the Subpoenas Are Crucial to Movants' Defenses and Counterclaims, and Thus Are Calculated to Lead to the Discovery of Admissible Evidence.**

"Rule 45(d) covers subpoenas ... and permits them to require the production of designated documents which are within the scope of the examination permitted by Rule 26(b)...." *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965). Fed. R. Civ. P. 26(b)(1) permits discovery of "any matter, not privileged, that is relevant to the claim or defense of any party...." The Supreme Court has construed relevance for the purposes of discovery "broadly[,] to encompass any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978).

The Subpoenas require production of the following documents:

    1.    All Documents Concerning Superman and/or Superboy;

    2.    All Documents Concerning Superman and/or Superboy including, but not limited to, negotiations by or with the [Movants], [the Siegels], Michael Siegel, and/or the Shuster

>    Representatives [a term defined to include any representative or agent of the Shuster Heirs or Shuster's estate];
>
>    3.   All Documents Concerning any agreements with [the Siegels], Dennis Larson, Michael Siegel, and/or the Shuster Representatives Concerning Superman and/or Superboy, including but not limited to, any agreements concerning any ownership interest in and/or revenue from Superman and/or Superboy;
>
>    4.   All Documents Concerning any valuation of any current or potential ownership interest in Superman and/or Superboy;
>
>    5.   All Documents evidencing any correspondence with any third person concerning Superman and/or Superboy.
>
>    6.   All Documents Concerning the letter of agreement dated August 1, 1992, signed by Paul Levitz, Frank Shuster, and Jean Shuster Peavy.

These documents are crucial to Movants' defenses and counterclaims. As an initial matter, because Siegel and Shuster were co-creators of Superman, to the extent they were copyright owners, such copyrights were owned jointly. At the present time, it is undisputed that DC Comics is the successor to Shuster's copyright interests and thus any documents in the Shuster Heirs' possession concerning Superman or Superboy is relevant to DC Comics' copyright interests. Moreover, Mark Peary petitioned the Los Angeles Superior Court to be appointed "personal representative" with respect to any copyrights Shuster may have owned.

Second, because one of the primary issues in the Underlying Actions is an attempt to place a value upon the Siegels' purported re-captured share in the Superman copyrights, any agreements the Shuster Heirs may have made regarding their purported copyright interest are directly relevant.

Third, in the Superboy Action, the Siegels have claimed that they are the sole owners of copyright in Superboy, even though Shuster was the artist for the first

Superboy comic. Any documents the Shuster Heirs may have concerning Superboy thus also will be directly relevant to the Superboy Action.

### 2. The Shuster Heirs Have Waived Their Right To Object To Production Of Any Of The Documents Responsive To The Subpoenas.

Fed. R. Civ. P. 45(c)(2)(B) requires the recipient of a subpoena *duces tecum* to lodge a written objection to a document request within 14 days after the service of the subpoena. Moreover, where documents are withheld on the basis of privilege, "the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claims." Fed. R. Civ. P. 45(d)(2).

Failure to make a timely written objection pursuant to Rule 45(c)(2)(B) results in a waiver of the right to object. *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M. 1998). There is no dispute that the Shuster Heirs have not timely objected. Indeed, the Subpoenas were served three and a half months ago. Notwithstanding multiple instances of correspondence directed to the Shuster Heirs' counsel, no objections of any kind, including objections on the basis of privilege, were ever made as required under Rule 45. Thus, the Shuster Heirs have now waived such objections, and they should be ordered to produce all responsive documents without objection.

## II
## THE SHUSTER HEIRS SHOULD BE HELD IN CONTEMPT
## FOR FAILING TO PRODUCE RESPONSIVE DOCUMENTS

Federal Rule 45(e) provides:

> Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which subpoena issued.

Fed. R. Civ. P. 45(e).

Fed. R. Civ. P. 45(a)(1)(C) requires the Shuster Heirs to produce all responsive documents and things "in [their] control whether or not the materials are located within the district or within the territory within which the subpoena can be served ..." *See* Fed. R. Civ. P. 45, Committee Note of 1991. For purposes of Rule 45, "[c]ontrol is defined as the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989), *cited in 7-Up Bottling co. v. Archer Daniels Midland Co.*, 191 F.3d 1090, 1107-1108 (9th Cir. 1999). Thus, recipients of subpoenas are required to produce documents not just in their direct possession, but in the possession of their agents or representatives, including in the possession of their counsel.

It is clear that the Shuster Heirs made virtually no attempt to comply with the Subpoenas, obviously failing to obtain documents even from their counsel. For example, other than two documents that originated with DC Comics, no documents at all were produced relating to the Superman character in which the Shuster Heirs claim they will recapture rights in 2013. As another example, no documents relating to the Shuster Heirs' discovery of a purported will or their application to the Los Angeles Superior Court were produced. Similarly, no documents concerning any negotiation of any agreement related to their purported interest in Superman were produced. Indeed, the Shuster Heirs did not even produce the Shuster Termination Notice itself.

In light of the foregoing, Movants respectfully request that the Shuster Heirs be held in contempt until such time as they comply with the subpoenas and produce all responsive documents.

### III
### MOVANTS ARE ENTITLED TO REIMBURSEMENT OF THEIR ATTORNEYS' FEES FOR THE COST OF MAKING THE INSTANT MOTION

Courts have held that the award of attorneys' fees is appropriate for motions brought under Rule 45. *See, e.g., First Indem. Of Am. Ins. Co. v. Shinas*, 2005 U.S. Dist. LEXIS 35860 at *12-14 *(S.D.N.Y. 2005) (awarding attorneys' fees on motion brought under Rule 45).

The Shuster Heirs have had three and a half months to comply with the Subpoenas, but have failed to do so. Movants' counsel has worked cooperatively and patiently in an attempt to obtain compliance, but to no avail. Movants should not be made to pay for having to make this motion caused solely by the Shuster Heirs' non-compliance with the Subpoenas.

WHEREFORE, Movants request: (1) that the Shuster Heirs be required to turn over, as soon as possible, all documents responsive to the Subpoenas without objection; (2) that the Shuster Heirs be held in contempt for their non-compliance with the Subpoenas; and (3) that Movants' attorneys' fees incurred in making the instant motion be reimbursed.

Respectfully submitted,

SUTIN THAYER & BROWNE
A Professional Corporation

By /s/ Benjamin Allison
Benjamin Allison
Post Office Box 2187
Santa Fe, NM 87504
(505) 988-5521

Patrick T. Perkins
PERKINS LAW OFFICE, PC
1711 Route 9D
Cold Spring, New York 10516
Tel: (845) 265-2820
Fax: (845) 265-2819

*Counsel for Movants*

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.