**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

06 SEP 11 PM 4:20

IN RE: SUBPOENAS *DUCES TECUM*
ISSUED BY THE U.S. DISTRICT
COURT FOR THE DISTRICT OF
NEW MEXICO IN:

**Case No. MC-06-20 MV** CLERK-SANTA FE

JOANNE SIEGEL and LAURA
SIEGEL LARSON,

        Plaintiffs,

        v.

WARNER BROS. ENTERTAINMENT
INC., et al.,

        **Defendants.**

**Case Nos.  CV 04-8400; 04-8776
(Consolidated for Discovery Purposes)**

**Action Pending in the U.S. District
Court for the Central District of
California**

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA *DUCES TECUM*, FOR CONTEMPT, AND FOR ATTORNEYS' FEES

    Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), respectfully submit this reply memorandum of law in support of their motion to compel production of documents pursuant to Fed. R. Civ. P. 45(c)(2)(B), for contempt pursuant to Fed. R. Civ. P. 45(e), and for attorneys' fees.

### PRELIMINARY STATEMENT

    For nearly three months Movants made repeated requests for the Shuster Heirs to comply with their obligations under the Subpoenas and to produce responsive documents.  The Shuster Heirs made no objections but then failed to comply with the subpoena.  In mid-July, just three weeks prior to a scheduled deposition, the Shuster Heirs produced *eight pages of documents*, again without serving any objection to the Subpoenas.  When Movants sent a deficiency letter asserting that, failing full production, Movants would move for contempt, the Shuster Heirs'



counsel never responded.

Now, in response to this Motion, the Shuster Heirs claim to have cooperated fully, purportedly producing "all" documents responsive to the Subpoenas. However, the Shuster Heirs fail to disclose that they supplemented their production only after Movants had gone to the expense of making this motion. Moreover, notwithstanding the Shuster Heirs' counsel's insistence that his clients have produced all responsive documents he offers no declaration under oath from his clients so stating, or chronicling the efforts made to gather documents. Indeed, in direct contrast to their claim of having produced "all" documents, the Shuster Heirs energetically argue on this motion that, due to the purported overbreadth of the Subpoenas, they have not waived their months-out-of-time objections. If the Shuster Heirs have, in fact, produced "all" documents responsive to the Subpoenas, why have they (a) refused to concede they have waived their objections, (b) sought to resuscitate their waived objections and (c) refused to submit sworn testimony stating all documents were produced? The answer is obvious – compliance has not occurred.

Even assuming, *arguendo*, that objections on "overbreadth" grounds were not waived long ago, the Shuster Heirs' argument of overbreadth is based upon their conveniently narrow view of the merits of the litigations pending in the Central District of California (the "California Litigations"). In effect, the Shuster Heirs ask this Court to rule on the merits of the California Litigations. Meanwhile, contrary to the Shuster Heirs' accusation of a failure to "connect the dots," Movants have shown the overwhelming relevance of the documents requested, and have easily met the Supreme Court's broad standard of relevance articulated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978).

The Shuster Heirs have not complied with the subpoenas and have waived their untenable objections thereto. As a result, the motion should be granted.

**I**

## THE SHUSTER HEIRS' CLAIM THAT THEY HAVE PRODUCED ALL RESPONSIVE DOCUMENTS IS DEMONSTRABLY FALSE.

In order to avoid a finding of contempt, a non-movant must demonstrate, *inter alia*, reasonable diligence in attempting to comply with an order. *In re Corso*, 328 B.R. 375, 385-386 (S.D.N.Y. 2005), *citing United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995). Fed. R. Civ. 45(a)(1)(C) requires the Shuster Heirs to produce all responsive documents and things "in [their] control whether or not the materials are located within the district or within the territory within which the subpoena can be served . . . ." *See* Fed. R. Civ. P. 45, Committee Note of 1991. For purposes of Rule 45, "[c]ontrol is defined as the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

The Shuster Heirs' brief establishes that none of their counsel or other representatives made any comprehensive search of their files for responsive documents. Indeed, the Shuster Heirs concede that their counsel searched *only* for "a fully executed copy" of one agreement and nothing else. (Shuster Mem. at 10.) They further admit that they "produced all the documents they had to their counsel, Toberoff, and he produced all such documents to Defendants . . . ." (*Id.*) What is more, among the few documents produced by the Shuster Heirs was a series of business agreements relating to Superman between them and a corporation owned by their counsel (Counsel's Corporation). (Perkins Reply Decl. ¶ 2.)[1] There is no mention of Counsel's Corporation or any of the Shuster Heirs' counsel or other representatives conducting a comprehensive search of their files.

The Shuster Heirs further concede that the history of Superman -- all of it directly relevant to the California litigations -- "span[s] . . . over 70 years." (Shuster Mem. at 12.) It is simply not credible that the sister and grandson of Joseph Shuster, the co-creator of Superman in

---

[1] References to "Perkins Reply Decl." refer to the Reply Declaration of Patrick T. Perkins submitted herewith. References to "Ex. _" refer to the exhibits attached to Movants' moving papers. References to "Reply Ex. _" refer to exhibits attached to the Reply Declaration of Patrick T. Perkins, attached to these reply papers.

the 1930s, would possess only 136 pages of documents relating to Superman.

Tellingly, the Shuster Heirs offer *no explanation* of any "reasonable diligence" in complying with the Subpoenas. The unsworn statements of their counsel in their Brief that they have produced "all" responsive documents simply do not hold water. In addition to the above evidence that they have *not* conducted a diligent search of documents, they strenuously argue to revive and preserve their objections to the Subpoenas, which they have steadfastly refused to withdraw. This seriously undermines their credibility in claiming that "all" documents have been produced.

Meanwhile, in an effort to distract the Court, the Shuster Heirs' Counsel attempts to smear Movants by claiming that they have failed to comply with their own discovery obligations. (Shuster Mem. at 5.) In addition to being irrelevant to the instant motion, the Shuster Heirs' Counsel's description of discovery in the California Litigations is misleading at best. For example, the Shuster Heirs' Counsel fails to disclose that Movants began producing documents on a rolling basis on June 13, 2005 and that, to date, thousands of comic books and over 67,000 numbered pages of documents have been available for review and for copying and that he has neither reviewed nor copied them, aside from a small 5000 page production made available in September 2005. (Perkins Reply Decl. ¶ 3.) Moreover, due to the *California Plaintiffs'* discovery misconduct, Movants have had to initiate no fewer than four discovery motions under the Central District of California's joint stipulation procedures for discovery motions. On the other hand, there is no pending discovery issue with regard to Movants and the California Plaintiffs have not filed a single such motion in the California Litigations. (*Id.* ¶ 4.)

## II
## THE SHUSTER HEIRS' ATTEMPT TO OVERCOME THE WAIVER OF THEIR OBJECTIONS TO THE SUBPOENAS IS ENTIRELY WITHOUT MERIT.

The Shuster Heirs do not deny that, in this District, failure to make a timely written objection pursuant to Rule 45(c)(2)(B) results in a waiver of the right to object. *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M. 1998). *See also Wang v. Hsu*, 919 F.2d 130, 131

(10th Cir. 1990). Instead, the Shuster Heirs rely upon a handful of inapplicable cases to excuse their failure to timely object to the Subpoenas. What the Shuster Heirs fail to disclose to the Court is that the cases upon which they rely clearly state that excusing the failure to timely object to a document subpoena takes place only "[i]n unusual circumstances." *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 U.S. Dist. LEXIS 14812, at *6 (D. Kan. July 23, 2002). *See also American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136-137 (D. Ohio 1999).

In an attempt to characterize this case as one of those "unusual circumstances," the Shuster Heirs argue that they have met the required elements and have established that: (1) the Subpoenas are "overbroad and burdensome" (Shuster Mem. at 10); (2) that the Shusters have acted in "good faith," (*id.* at 15); and (3) that counsel for Movants and the Shuster Heirs were in contact shortly after service of the Subpoenas . . . ." (*Id.* at 16.) In order to establish that the "unusual circumstances" exist, the Shuster Heirs must establish that *all three* of the above elements exist. *See W. Res., Inc.*, 2002 U.S. Dist. LEXIS 14812, at *6; *American Elec. Power Co.*, 191 F.R.D. at 136 (D. Ohio 1999). In fact, the Shuster Heirs can establish none of them.

### 1. All Of The Documents Requested By The Subpoena Are Directly Relevant To The California Litigations As They Are Likely To Lead To The Discovery Of Admissible Evidence.

The Shuster Heirs ignore the Supreme Court holding that, for the purposes of discovery, relevance is to be construed "broadly[,] to encompass any matter that *bears on, or that reasonably could bear on*, any issue that is or may be in the case." *Oppenheimer Fund, Inc*, 437 U.S. at 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (emphasis added). The Shuster Heirs baldly assert that Movants "never connect the dots" as to the relevance of the requested documents to the California Litigations. (Shuster Mem. at 12.) However, in the next breath, the Shuster Heirs *concede* that Movants *have* provided reasons why the documents are relevant to the California Litigations -- they just don't agree with the reasons. (Shuster Mem. at 15.)

The Shuster Heirs' arguments as to relevance of the requested documents are based upon substantive arguments advanced by the plaintiffs (the "California Plaintiffs") in the California

Litigations and ignore Movant DC Comics' extensive counterclaims. Effectively, the Shuster Heirs are requesting that this Court decide the merits of the California litigations, rather than apply the relevant standard on this motion, *i.e.*, whether the documents requested are likely to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The Shuster Heirs adopt the California Plaintiffs' characterization of a successful recovery, namely, that the California Plaintiffs are entitled to 50% of all profits derived from exploitation of Superman. The Shuster Heirs further assert that the value of the Shuster share in Superman and correspondence concerning Superman have no relevance to the California Litigations. (Shuster Mem. at 13-14.) These characterizations are incorrect.

The California Litigations center on the claim of the widow and daughter of Jerry Siegel, the co-creator of Superman, that they have recaptured his undivided one-half interest in the first Superman comic book and 100% of the interest in certain "Superboy" comic books. (Reply Ex. 1, ¶¶ 42-65; Reply Ex. 2, ¶¶ 42-65.) The California Plaintiffs' claims rely almost entirely upon the copyright termination provisions of the Copyright Act, 17 U.S.C. § 304(c). These provisions are complicated and highly technical.

In response to Plaintiffs' claim that they are entitled to 50% of all profits realized by Movants from any exploitation of Superman, Movants have filed 38-page counterclaims in both of the California Litigations (Reply Exs. 1 & 2), directed at both the effectiveness of the California Plaintiffs' copyright termination notices, as well as whether the "profits" upon which any accounting would be based should be reduced based upon a number of factors. (Reply Ex. 1, ¶¶ 66-139; Reply Ex. 2, ¶¶ 66-139.)

Specifically, Movants have asserted six counterclaims, including but not limited to:

(1) a counterclaim for declaration on the limitations on the scope of the termination notices, including

(a) the failure to terminate an advertisement containing a visual depiction of Superman authored by Joseph Shuster,

(b) the continued right of Movants to exploit works created before the effective date of the copyright termination notices,

(c) a declaration that Movant DC Comics is the sole owner of

works and elements created between the publication of the first Superman comic and the purported effective date of the copyright termination notices,

(d) a declaration that Superboy is a derivative work based upon Superman,

(e) a declaration that Superboy was authored jointly by Siegel and Joseph Shuster,

(f) a declaration that the television program "Smallville" is not derived from "Superboy," and

(g) a declaration that a number of Superman works are "works made for hire" under the 1909 Copyright Act;

(*Id.* ¶¶ 102-135); and

(2) a counterclaim for a declaration that an accounting, if any, to the California Plaintiffs:

(a) would be limited to revenues from exploitation in the United States,

(b) would not include revenue from works created after the first Superman comic book and before the purported effective date of the copyright termination notices,

(c) would be reduced by the failure to terminate the visual depiction of Superman in the advertisement drawn by Joseph Shuster,

(d) would be reduced to that portion of profit attributable to the copyrightable elements in the first Superman comic book,

(e) would be reduced to exclude profits of any licensees of Movant DC Comics, and

(f) would not include profits from non-copyright uses of Superman such as trademark uses, and would be reduced by Movant DC Comics' direct and indirect expenses.

(*Id.* ¶¶ 136- 139.)

With respect to the first of the counterclaims listed above, documents concerning the 70-year history of Superman, including the creation of the first comic and the succeeding works based thereon, and Joseph Shuster's contributions thereto, are directly relevant to, and indeed crucial to, Movants' case. Similarly, documents concerning Joseph Shuster's contributions to Superboy are also relevant to the case, as they would bear on the issues of whether Superboy, who is Superman as a youth, is a derivative work based upon Superman, whether Superboy was authored jointly by Jerry Siegel and Joseph Shuster, and whether Clark Kent depicted in the

television program *Smallville* is in fact Superboy.[2]

Similarly, with respect to the second counterclaim listed above, documents concerning valuation of the Joseph Shuster "share" of Superman are directly relevant.  The Shuster Heirs' claim that Movants' valuation argument "makes no common or legal sense" is directly contradicted by *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984), the very case upon which they rely. (Shuster Mem. at 14.)  The Shuster Heirs concede that, at very best, the California Plaintiffs are co-owners of Superman with Movant DC Comics, which owns the Joseph Shuster share.  (*Id.* at 13.)  In the *Oddo* case, the Ninth Circuit held that any accounting between co-owners must be done on an equitable basis, not necessarily on a straight 50-50 split.  *See Oddo*, 743 F.2d at 633. This equitable basis includes applying the apportionment formulas by analogy from copyright infringement cases.  *Merchant v. Lymon*, No. 87 CIV. 7199 (BDP)(NRB), 1995 WL 217508, at *3 (S.D.N.Y. April 11, 1995).  In infringement cases, in determining what "profits attributable to infringement" are due to a successful plaintiff (who, by analogy, is in the position of a co-author), courts deduct from profits other elements that contribute to the success of an infringing work.  *Sheldon v. Metro-Goldwin Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939) (Learned Hand, J.) (awarding only 20% of profits, deducting contributions of infringer).[3]

Moreover, it is undisputed that Movant DC Comics is the current owner of the "Shuster share" of Superman and thus "stands in the shoes" of Joseph Shuster because the Shusters did not join the California Plaintiffs in serving any termination notices yet having any effective date. Any documents possessed by the Shuster Heirs, one of which is the executor of the Shuster Estate, are thus *de facto* relevant to Movants' defenses in the California litigations.  That the

---

[2] The Shuster Heirs attempt to argue that Superboy is now irrelevant because partial summary judgment was granted to the California Plaintiffs in the Superboy case on some of the issues therein.  However, partial summary judgment is not a final judgment. *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 830 (9th Cir. 2006).  As a result, a court may revise the order later in the litigation.  11-56 *Moore's Federal Practice - Civil* § 56.40.

[3] *See also*, *Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir. 1988) (court must apportion profits because factors other than the copyrighted story clearly contributed to the accused work's success); *Frank Music Corp. v. MGM Inc.*, 886 F.2d 1545 (9th Cir. 1989) (to the same effect); *Cream Records v. Jos. Schlitz Brewing Company*, 754 F.2d 826 (9th Cir. 1985) (value of non-infringing, independently created material excluded from profits attributed to copyrighted work).

Shuster Heirs are "rooting" for the California Plaintiffs to succeed in the California Litigations in order to improve their chances of enforcing their own notice of copyright termination intended to take effect in 2013 should not justify their stonewalling the attempts of Movant DC -- their successor in interest -- to obtain relevant documents. The documents requested by the Subpoenas are relevant and obviously likely to lead to the discovery of admissible evidence.

### 2.  The Shuster Heirs' Claim That The Subpoenas Are Burdensome Cannot Be Considered Because They Have Failed To Offer Evidence Of Such Burden.

"[P]arties asserting undue burden . . . have the burden to support their objection, by showing not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery. This typically requires providing an affidavit or other evidentiary proof of the expense or time involved in responding to the discovery request." *Long v. Landvest Corp.*, No. Civ. A. 04-2025-CM-DJ, 2006 U.S. Dist. LEXIS 16369 at *15-16 (D. Kan. Mar. 31, 2006).[4]

The Shuster Heirs make the self-serving, conclusory assertion that the Subpoenas place "an unreasonably heavy burden" on them, but offer no "evidentiary proof of the expense or time involved in responding to the discovery" to support their claim. (Shuster Mem. at 12.) Such conclusory statements are not sufficient to support an objection based upon burdensomeness. *Landvest Corp.*, 2006 U.S. Dist. LEXIS 16369 at *15-16. Moreover, burdensomeness is belied by the fact that the Shuster Heirs have served notices of termination under Section 304(d) of the Copyright Act, which carries with it an obligation to conduct a significant investigation in order to determine, locate and identify appropriate grants and works. 37 C.F.R. § 201.10(d).

### 3.  The Shuster Heirs' Claim That They Have Acted In Good Faith Is Similarly Without Merit.

In their opposition to this Motion, the Shuster Heirs claim to have acted in good faith. However, the documented facts establish that this is untrue.

Between April 12, 2006 – the date the Subpoenas were served -- and the date this motion

---

[4] *See also, Waddell & Reed fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004).

was filed, Movants requested no less than *eight times*, without success, that the Shuster Heirs comply with the Subpoenas. (Ex. 12 at 4; Ex. 10 at 1-2; Ex. 11; Ex. 12 at 1; Ex. 14 at 2; Ex. 15; Ex. 17; Ex. 18; and Ex. 20.)

The Shuster Heirs concede that, on July 18, 2006, only four days after their grossly deficient production of eight pages, Movants sent them a deficiency letter (the "July 18 Deficiency Letter" (Ex. 20)). (Shuster Mem. at 9.) However, the Shuster Heirs fail to disclose to the Court that the letter requested a response no later than July 25, 2006 (Ex. 20), and that they never responded until after the instant motion was filed. (Perkins Reply Decl. ¶ 7.)

The Shuster Heirs mischaracterize the contents of the July 18 Deficiency Letter, asserting that it demanded only documents concerning Joseph Shuster's will. (Shuster Mem. at 9.) This is incorrect. In fact, the July 18 Deficiency Letter also states, in pertinent part:

> Similarly, no documents concerning any negotiation related to any agreement relating to any of their interest in Superman or Superboy were produced. The list goes on and on.

(Ex. 20 at 1.)

The Shuster Heirs claim that they have acted in good faith by making themselves available for deposition and by purportedly producing all responsive documents and a privilege log. (Shuster Mem. at 15-16.) That the Shuster Heirs belatedly made themselves available for deposition is irrelevant here. From the very beginning of discussions between counsel, counsel for Movants made it clear that the depositions would not go forward until all responsive documents were produced. (Exs. a 9-17.) The Shuster Heirs' attempt to rush the depositions is actually a sign of their bad faith as they sought to have Movants depose them without having possession of the relevant documents.

As for the Shuster Heirs' claim of having produced "all" documents, as established in Section I *supra*, they have not done so, a fact that is underscored by their insistence that they may legitimately maintain objections based on burden and relevancy. Moreover, producing the bulk of those documents they decided to produce only after failing to respond to a deficiency letter and after Movants were required to expend the resources to file the instant motion, can

hardly be called acting in "good faith."[5]

### 4. The Shuster Heirs' Claim That Counsel For The Parties Were In "Close Contact" Is Disingenuous.

The Shuster Heirs claim that counsel were in "close contact" concerning what they call "compliance issues" prior to service of the Shuster Heirs' untimely objections to the Subpoenas. (Shuster Mem. at 16.) In fact, a review of the correspondence between counsel demonstrates that this "close contact" was a conversation of one – consisting almost entirely of Movants' counsel chasing down the Shuster Heirs' counsel for production of the documents. When three months after the Subpoenas were served, the Shuster Heirs produced just eight pages of documents, Movants made an attempt to resolve the matter through the July 18, 2006 Deficiency Letter. (Perkins Ex. 20.) Notwithstanding a deadline of July 25, 2006, the Shuster Heirs' counsel failed to respond, necessitating the filing of the instant motion. (Perkins Reply Decl. ¶ 7.) Were the Shuster Heirs permitted to rely upon the correspondence concerning their non-compliance with the Subpoenas to excuse their waiver of objections, it would be perverse and make a mockery of the Federal Rules and the unambiguous deadline for objecting to subpoenas set forth in Rule 45.

### III

### MOVANTS ARE ENTITLED TO REIMBURSEMENT OF THEIR ATTORNEYS' FEES FOR THE COST OF MAKING THE INSTANT MOTION

In seeking to be excused from reimbursing Movants for the costs of this motion, the Shuster Heirs go on the attack, claiming that Movants have a "*hidden agenda*" in serving the Subpoenas. (Shuster Mem. at 20.) As set forth in Section II (1) *supra*, Movants have established that the Subpoenas are entirely appropriate. Meanwhile, the Shuster Heirs are conspicuously silent as to their failure to respond to the July 18 Deficiency Letter. This is particularly telling as

---

[5] The Shuster Heirs supplemented their production with an additional 128 pages of documents. However, of those 128 pages, 41 were made up of a copy of the Shuster Heirs' Notice of Termination served upon Movants in November 2003. Another eight pages were made up of correspondence between the Shuster Heirs and Movant DC Comics. Also produced with the supplemental production was a two-page privilege log identifying 13 purportedly privileged documents. As set forth in their moving papers, Movants maintain that the Shuster Heirs have waived the attorney client privilege. (Perkins Reply Decl. ¶ 8.)

such letter made clear that, failing a resolution of the matter, Movants would file the instant motion.

That the Shuster Heirs have made an attempt to produce documents *after* Movants filed this motion and have belatedly asserted their objections should not excuse them from reimbursing Movants' costs here. Movants made a good faith effort – over a period of more than three months – to obtain the Shuster Heirs' documents. The Shuster Heirs failed to comply. These circumstances more than justify an award of fees. *See Standifer v. International Bhd. of Teamsters*, Civ. A. No: 97-2037-GTV, 1998 U.S. Dist. LEXIS 4132, at *3-4 (D. Kan. March 20, 1998).

WHEREFORE, Movants request: (1) that the Shuster Heirs be required to turn over, as soon as possible, all documents responsive to the Subpoenas without objection; (2) that the Shuster Heirs be held in contempt for their non-compliance with the Subpoenas; and (3) that Movants' attorneys' fees incurred in making the instant motion be reimbursed.

Respectfully submitted,

SUTIN THAYER & BROWNE
A Professional Corporation

By _____
   Benjamin Allison
Post Office Box 2187
Santa Fe, NM  87504
(505) 988-5521

Patrick T. Perkins
PERKINS LAW OFFICE, PC
1711 Route 9D
Cold Spring, New York 10516
Tel: (845) 265-2820
Fax: (845) 265-2819

*Counsel for Movants*

CERTIFICATE OF SERVICE

We hereby certify that on this 11th day of September 2006 we sent a copy of this Reply

Memorandum In Support of Defendants' Motion to Compel Production of Documents Pursuant

to Subpoena Duces Tecum For Contempt, and for Attorneys' Fees, together with the Reply

Declaration of Patrick T. Perkins in Support of Defendants' Motion to Compel Production of

Documents Pursuant to Subpoena Duces Tecum, for Contempt, and For Attorneys' Fees by

facsimile to (310) 246-3101 and by first-class mail, postage prepaid to:

        Marc Toberoff, Esq.
        Law Offices of Marc Toberoff, PLC
        2049 Century Park East, Suite 2720
        Los Angeles, CA 90067

SUTIN THAYER & BROWNE
A Professional Corporation

By